This appeal follows a conviction, pursuant to a guilty plea, for the offense of second degree escape, in violation for §13A-10-32, Code of Alabama (1975). Appellant was sentenced to a term of 20 years' imprisonment as a habitual offender. For the reasons outlined below, we affirm.
The appellant was serving sentences for the felony convictions of receipt of stolen property and possession of a forged instrument when the events of the present offense occurred. The appellant was a participant in the "Supervised Intensive Restitution," or "S.I.R.," program; the charge in the present case was based upon his failure to return at the proper time to his place of residence, as was required by the S.I.R. program. As a result of a plea bargain, the appellant plead guilty and received a sentence of twenty years' imprisonment. On this appeal, the appellant argues that: (1) his guilty plea was not "voluntarily, knowingly and intelligently made"; (2) he was denied effective assistance of counsel; and (3) the "material facts" do not establish that he is guilty of the felony offense of second degree escape. The State of Alabama has declined to file a brief and has requested that this court "remand this case for further proceedings" under the authority of Ex parte Alexander, 475 So.2d 628 (Ala. 1985). We disagree with both the appellant's position and the State's recommendation.
 I
The appellant argues that his guilty plea was not "voluntarily, knowingly, and intelligently" made, due to his "lack of understanding of [the] law in relation to [the] facts [of the] surrounding charge." According to the appellant, at "no time" during the hearing on the acceptance of his guilty plea did the trial court make "an effort to explain [the] meaning of [the] charged offense." Additionally, the appellant asserts that he was "coerced" into entering the guilty plea by "threats of a more severe sentence if [he] proceeded to trial."
Contrary to the appellant's position, however, the record reflects that the appellant was advised of his constitutional rights. The record also reflects that the appellant stated that he understood his rights and was aware that he would be waiving some of these rights if he decided to plead guilty. The appellant's claims are without merit, as shown by the following portions of the trial transcript:
 "THE COURT: Do you understand and has your lawyer advised you of the elements that go to make up this charge [escape in the second degree], and really do you understand the charge?
"THE DEFENDANT: Yeah.
 "THE COURT: Have you read over and has your lawyer explained or have you read this exhibit [executed Ireland form]?
"THE DEFENDANT: Yeah.
"THE COURT: Is that your signature?
"THE DEFENDANT: Yeah.
 "THE COURT: Did you sign it of your own free will and accord?
"THE DEFENDANT: Uh huh.
 "THE COURT: And it's my understanding you're going to plead guilty to *Page 644 
this charge. Do you do that of your own free will and accord?
"THE DEFENDANT: Yeah.
 "THE COURT: Now, you can try this case before a jury. You would be presumed innocent. The State would have the burden to prove beyond a reasonable doubt that you were guilty before you could be found guilty. You have the right to amend your pleas and add any additional defenses. You have the further right to require your witnesses to attend court, and you could testify or not testify. And if you chose not to testify nothing could be said about it. And, lastly, you have the right to be confronted by and cross-examine all witnesses against you. Do you understand that you waive those rights when you plead guilty?
"THE DEFENDANT: Yeah.
 "THE COURT: Has anyone promised to reward you or any member of your family or anybody else to get you to say that you are guilty?
"THE DEFENDANT: No, sir.
 "THE COURT: Now, your lawyer and the district attorney as you well know have been talking together about the settlement of this case, not only yesterday but today. They have agreed upon a settlement which you have agreed upon, too. What I want you to do is tell me — and I always ask this of everyone — what kind of a sentence have you agreed to? What kind of a sentence do you know you're going to get?
"THE DEFENDANT: Twenty years running concurrent.
 "THE COURT: Twenty years run concurrent with your present case, right?
"THE DEFENDANT: Right.
 "THE COURT: Okay. All right. Knowing that, how do you plead to the charge of escape in the second degree?
"THE DEFENDANT: Guilty.
 "THE COURT: And are you changing your plea to guilty because you are in fact guilty, are you guilty?
"THE DEFENDANT: Yes, sir.
 "THE COURT: Do you have anything to say as to why sentence should not be pronounced against you?
"THE DEFENDANT: No, sir."
Due notice of the State's intent to proceed under the Habitual Felony Offender Act had been made, and the State introduced evidence of three prior felony convictions for the offenses of forgery in the second degree; buying, receiving, and concealing stolen property; and possession of a forged instrument in the second degree.
The trial court considered the appellant's previous felony convictions and advised the appellant that he would be sentenced to a term of imprisonment of twenty years under the Alabama Habitual Felony Offender Act. This sentence, as noted above, was a part of the plea bargain. Before accepting the appellant's plea and sentencing him, however, the trial court further examined the appellant and his counsel and inquired as follows:
 "THE COURT: Mr. Jones, the lawyer, do you recommend the acceptance of this plea?
 "MR. JONES [defense attorney]: Yes, your honor, I believe it's in my client's best interest.
 "THE COURT: All right. In your judgment has he voluntarily, knowingly and intelligently waived his rights in entering this plea of guilty?
"MR. JONES: Yes, sir.
 "THE COURT [To the Defendant]: Do you think this is in your best interest?
"THE DEFENDANT: Yes, I do."
At this point, the trial court accepted the appellant's guilty plea and sentenced the appellant according to the plea bargain agreement.
Appellant does not argue that the terms of the plea bargain were not honored. Instead, he argues that his guilty plea was not "voluntary and intelligent" and that he was coerced into pleading guilty. Contrary to the appellant's position, however, the record reveals that the appellant's guilty plea was "intelligently and voluntarily" entered; that fact is evidenced by the colloquy between the trial court and the appellant, *Page 645 
portions of which have been quoted above. In addition to the appellant's statements at trial, the record reveals that court-appointed counsel informed the trial court that he recommended the plea; that it was in his "client's best interest," and that, in his judgment, the appellant's plea was "voluntarily, knowingly and intelligently" made. The appellant also executed an Ireland[1] form which he stated he had read and understood. Based on these facts, it is apparent that the appellant has failed to carry his burden of proof to show that his plea was not intelligently and voluntarily made. German v.State, 492 So.2d 622 (Ala.Cr.App. 1985).
The record also does not reflect that the appellant, in any manner, was "coerced" into pleading guilty. In fact, the appellant agreed that his guilty plea was in his "best interest."[2] As further evidence of a lack of coercion, the record contains a copy of a statement executed by the appellant on the day he entered his guilty plea. In the statement, the appellant asserts that he is "satisfied with the plea bargaining;" that he pleaded "guilty of [his] own free will"; that no one "forced" or "coerced" him "in any manner" in order to get him to plead guilty; and that no one promised him "anything" to get him to plead guilty. Other than for appellant's unsupported claims, there is no indication in the record that the appellant was an involuntary or coerced participant in the guilty plea proceedings. Whorton v. State,422 So.2d 812 (Ala.Cr.App. 1982).[3]
 II
The appellant also argues that he was denied effective assistance of counsel because his court-appointed trial counsel "misinformed [him] regarding the law in relation to facts surrounding offense charged;" because his counsel "coerced [him] to enter [the] guilty plea;" and because trial counsel "failed to fully consider possibilities" because counsel did not "set about to learn facts and the law pertinent to [the] case." Appellant does not indicate what kind of "investigation" would have benefited his defense and, other than these mere allegations, nothing in the record supports appellant's charge of "ineffective assistance of counsel."
Instead, the record contains a document wherein the appellant states that his *Page 646 
court-appointed counsel was a "competent, good attorney" who had "represented [him] to [his] best interest in the settlement of the case." The appellant does not attack the validity or authority of this document. Because the record does not support his claim, the appellant's unsubstantiated argument that he was denied effective assistance of counsel is without merit.
 III
The argument which appears to have the most merit, according to the State, is the appellant's assertion that he was "erroneously convicted of a felony" because the "material facts" failed to "establish a felony under statutory law defining escape in the second degree." The relevant portion of the appellant's legal argument is quoted as follows:
 "The record clearly shows that defendant was an authorized participant in the `S.I.R.' program permitting convicted felons to live at their homes or other sponsored living residence. The record clearly establishes that (1) defendant did not escape from custody imposed pursuant to his conviction, nor (2) did defendant escape from a penal facility."
Appellant argues that the S.I.R. program is "closely akin to that of parole." According to the appellant, "unauthorized absences from community based programs can only be considered as a breach of contract agreement constituting a misdemeanor violation." According to the State, the Alabama Supreme Court decision of Ex parte Alexander, 475 So.2d 628 (Ala. 1985), would require a reversal of the conviction.[4] We disagree with both parties.
The Alabama Supreme Court in Ex parte Alexander reversed this court's judgment in Alexander v. State, 475 So.2d 625
(Ala.Cr.App. 1984). In Alexander, the appellant was convicted of the offense of first degree escape for failure to return to his work release center. This court concluded that, for purposes of the first degree escape statute, the failure of the appellant to return to the work release center would be considered an escape from "custody." Id. at 627. In reversing this court's judgment, the Alabama Supreme Court merely considered the issue of whether the statutory interpretation announced by this court in Alexander's case could be applied to Alexander himself, in light of the previous contrary interpretation. In concluding that the Alexander decision should not be applied retroactively so as to reach Alexander himself, the Alabama Supreme Court specifically stated, "We are not to be interpreted as either agreeing or disagreeing with the construction given to Code 1975, § 13A-10-31, by the Court of Criminal Appeals, as we have not reached that issue." 475 So.2d at 631.
The Alexander decision, however, is distinguishable from the present case because of two important factors. In Alexander, the appellant was a participant in a work release program and was convicted of first degree escape. In the case sub judice, the appellant was convicted of second degree escape for wilfully failing to return to his "place of residence," where he was confined as a participant in the "Supervised Intensive Restitution," or "S.I.R.," program.[5]
The offense of second degree escape is statutorily defined as follows:
 "A person commits the crime of escape in the second degree if he escapes or attempts to escape from a penal facility." — 13A-10-32 (a), Code of Alabama
(1975). *Page 647 
The appellant has admitted that at the time of the offense, he was participating in the S.I.R. program and was confined to his residence as a condition of his participation. The appellant also admitted that he failed to return to his "place of residence," in violation of the terms imposed upon him by his participation in the program. The appellant argues that there is no "statutory offense" which covers this "conduct" and also argues that "the general escape provisions, in § 13A-10-30 et seq., do not specifically cover "the failure to return to defendant's place of residence or unauthorized absence therefrom."
There is, however, an express "statutory offense" which would govern the appellant's conduct. According to provisions of the S.I.R. Act, the following penalty would be imposed for "failure to remain within limits of confinement" while participating in the program:
 "The willful failure of an inmate to remain within the extended limits of the inmate's confinement or to willfully return within the time prescribed to the place of confinement designated by the commissioner or his agent, shall be deemed as an escape from the custody of a penal facility and shall be punishable as prescribed by law." § 15-18-121 Code of Alabama, (1975). (Emphasis added.)
By statute, an inmate who willfully fails to abide by the confining restrictions imposed upon him by the S.I.R. program will be considered to have "escaped" from the "custody" of a "penal facility." Thus, the appellant was properly convicted of the offense of second degree escape.[6]
AFFIRMED.
All the Judges concur.
[1] Ireland v. State, 47 Ala. App. 65, 250 So.2d 602 (1971).
[2] The assistant district attorney noted prior to the guilty plea proceedings, that the State was prepared to proceed to trial and prove the necessary elements for a conviction of escape in the first degree. Had the State gone to trial, the assistant district attorney said, he would have requested that the trial court impose a life sentence (to be run consecutively to the fifteen-year sentence which the appellant was presently serving), because the appellant was a habitual offender.
[3] Although it is not entirely clear from the appellant's brief, it would appear that the appellant also attacks the validity of his guilty plea based upon the trial court's "failure" to establish a factual basis for the plea. The thrust of this argument, however, is directed toward the appellant's theory that he, in effect, pleaded guilty to a "nonexistent crime." For the reasons outlined in the discussion of Issue III, however, it is apparent that a sufficient factual basis was established for the offense.
Before the trial judge, the appellant admitted that his attorney had advised him of the elements of the charge and that he understood those elements. The appellant also admitted that he was pleading guilty because he was, in fact, guilty and that it was in his "best interest" to do so. The factual basis was established, in part, by the appellant's admission that he knew to what offense he was pleading guilty. Garner v. State,455 So.2d 939 (Ala.Cr.App.), cert. denied, 455 So.2d 940 (Ala. 1984).
As this court has noted, "`an accused may plead guilty without admitting the acts of the crime if he intelligently concludes that his interest so requires and the record strongly evidences guilt.'" Mann v. State, 473 So.2d 1225, 1230-31
(Ala.Cr.App. 1985), quoting Young v. State, 408 So.2d 199, 201
(Ala.Cr.App. 1981). Additionally, as stated in Mann, "we cannot disregard the language and significance of the Ireland form" which was signed by the appellant, as well as by trial counsel and the trial judge. In the form, the appellant stated that he had been informed of the elements of the offense, that they had been explained to him, and that he was "guilty as charged." Contrary to appellant's position, a sufficient factual basis was established for the acceptance of his plea.
[4] The appellant has filed a pro se "reply brief" requesting that this court "proceed to reach a determination on all issues presented on appeal" and to deny the State's request to "remand this case for further proceeding." Appellant argues that in the interest of "justice" and "judicial economy," this court should "reach a determination on the issue" because the "record on appeal is sufficient." We agree, although in doing so we are holding adversely to the appellant.
[5] The provisions which govern the "Supervised Intensive Restitution (S.I.R.) Program" are codified in § 15-18-110 etseq, Code of Alabama (1975). The short title of the article is "The Inmate Community Reintegration Under SIR Act."
[6] The case sub judice is distinguishable from Allen v. State,481 So.2d 418 (Ala.Cr.App. 1985). In Allen, the appellant was convicted of the offense of first degree escape, after a trial by jury, based upon facts which occurred while the appellant was participating in the S.I.R. program. On appeal, the first degree escape conviction was reversed and the case remanded, based upon the decision in Ex parte Alexander, 475 So.2d 628
(Ala. 1985). The possible application of § 15-18-121, Code ofAlabama (1975), was not discussed in the Allen case. Under the provisions of the first degree escape statute, § 13A-10-31,Code of Alabama (1975), the escape or attempted escape must be from "custody." A second degree escape, however, need merely be from a "penal facility." Because the court in Allen did not consider the application of § 15-18-121 to a conviction forsecond degree escape, the Allen case would not affect the decision in the case sub judice.