Rel: May 3, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2023-2024

---

## CR-2023-0867

---

**State of Alabama**

**v.**

**Joshua Lamont MacGrady**

**Appeal from Jefferson District Court (DC-2022-1555)**

On Return to Remand

WINDOM, Presiding Judge.

The State of Alabama appeals the Jefferson Circuit Court's order granting Joshua Lamont MacGrady's motion to dismiss the case against him.[1]

Facts and Procedural History

On December 15, 2021, MacGrady's wife rented a moving truck from a rental company in Palm Beach County, Florida. The truck was not returned as scheduled, and the rental company reported the truck as stolen on January 28, 2022. Law enforcement initiated a traffic stop of the truck in Jefferson County on February 21, 2022. MacGrady was

[1] Judge Shanta Craig Owens, a Jefferson Circuit Court Judge, signed the orders in this case as a "District Judge." Further, MacGrady's motion and amended motion purported to have been filed in the circuit court, yet the trial court's digital stamp indicated that the motions had been filed in the district court.

Because the case had been bound over to the grand jury before the motion to dismiss had been granted, the district court no longer had jurisdiction of the case. See State v. Brown, 259 So. 3d 655, 659 (Ala. 2018) ("The district court does not retain authority over a case once the case has been bound over to the grand jury."). Accordingly, this Court remanded the case on April 15, 2024, for Judge Owens to clarify whether she was sitting as a circuit judge or acting as a district judge at the time she granted MacGrady's motion to dismiss.

On April 16, 2024, Judge Owens issued an order stating that she was sitting as a circuit judge when she granted MacGrady's motion to dismiss. Presumably, the case still carries a district court case number because the case was dismissed before MacGrady was indicted.

driving the truck at the time and was arrested for first-degree receiving stolen property, see §13A-8-17, Ala. Code 1975.

MacGrady was released on bond on February 24, 2022. On March 28, 2022, MacGrady entered a written demand for a speedy trial. MacGrady waived his preliminary hearing on May 10, 2022, and the case was bound over to the grand jury.

On May 16, 2023, MacGrady filed a motion to dismiss the pending charge because, he argued, his right to a speedy trial had been violated, and he filed an amended motion on October 17, 2023, that included several images of what appeared to be emails from a potential employer. (C. 36-42, 20-29.) The circuit court held a hearing on MacGrady's amended motion to dismiss on October 19, 2023. In a written order issued on November 9, 2023, the circuit court granted MacGrady's motion to dismiss. (C. 12.) The State timely appealed the circuit court's judgment on November 15, 2023. See Rule 15.7, Ala. R. Crim. P.

## Analysis

The State asserts on appeal that the circuit court erred in granting MacGrady's motion to dismiss because, it argues, MacGrady failed to prove that he was prejudiced by the delay in bringing him to trial. "The

facts before us are undisputed. The only question to be decided is a question of law, and our review is therefore de novo." Ex parte Heard, 999 So. 2d 978, 980 (Ala. 2003) (citing Ex parte Key, 890 So. 2d 1056, 1059 (Ala. 2003)).

In Ex parte Walker, 928 So. 2d 259 (Ala. 2005), the Alabama Supreme Court explained:

> "An accused's right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and by Art. I, § 6, of the Alabama Constitution, 1901. As noted, an evaluation of an accused's speedy-trial claim requires us to balance the four factors the United States Supreme Court set forth in Barker [v. Wingo, 407 U.S. 514 (1972)]: '[l]ength of delay, the reason for the delay, the defendant's assertion of [his or her] right, and prejudice to the defendant.' 407 U.S. at 530, 92 S. Ct. 2182 (footnote omitted). See also Ex parte Carrell, 565 So. 2d [104,] 105 [(Ala. 1990)]. 'A single factor is not necessarily determinative, because this is a "balancing test, in which the conduct of both the prosecution and the defense are weighed."' Ex parte Clopton, 656 So. 2d [1243] at 1245 [(Ala. 1995)] (quoting Barker, 407 U.S. at 530, 92 S. Ct. 2182)."

928 So. 2d at 263.

## Length of Delay

The first factor to evaluate is the length of the delay. "In Alabama, '[t]he length of delay is measured from the date of the indictment or the date of the issuance of an arrest warrant – whichever is earlier.'" Ex

parte Walker, 928 So. 2d at 264 (quoting Roberson v. State, 864 So. 2d 379, 394 (Ala. Crim. App. 2002)). MacGrady was arrested for first-degree receiving stolen property on February 21, 2022, and the circuit court held a hearing on his motion to dismiss on October 19, 2023.[2] The delay in this case was approximately 20 months.

In prior cases, this Court has held similar delays to be presumptively prejudicial. See State v. Pylant, 214 So. 3d 392, 395 (Ala. Crim. App. 2016), and the cases cited therein.

> "A finding that the length of delay is presumptively prejudicial 'triggers' an examination of the remaining three Barker factors. 505 U.S. at 652 n.1, 112 S. Ct. 2686 ('[A]s the term is used in this threshold context, "presumptive prejudice" does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the Barker enquiry.'). See also Roberson v. State, 864 So. 2d 379, 394 (Ala. Crim. App. 2002)."

Ex parte Walker, 928 So. 2d at 263-64. Because the length of delay in MacGrady's case was presumptively prejudicial, this Court will examine the remaining Barker v. Wingo, 407 U.S. 514 (1972), factors.

---

[2] It does not appear from the record that MacGrady has been indicted.

Reasons for the Delay

Returning to Ex parte Walker:

> "The State has the burden of justifying the delay. See Barker, 407 U.S. at 531; Steeley v. City of Gadsden, 533 So. 2d 671, 680 (Ala. Crim. App. 1988). Barker recognizes three categories of reasons for delay: (1) deliberate delay, (2) negligent delay, and (3) justified delay. 407 U.S. at 531. Courts assign different weight to different reasons for delay. Deliberate delay is 'weighted heavily' against the State. 407 U.S. at 531. Deliberate delay includes an 'attempt to delay the trial in order to hamper the defense' or '"to gain some tactical advantage over (defendants) or to harass them."' 407 U.S. at 531 & n.32 (quoting United States v. Marion, 404 U.S. 307, 325, 92 S. Ct. 455, 30 L. Ed. 2d 468 (1971)). Negligent delay is weighted less heavily against the State than is deliberate delay. Barker, 407 U.S. at 531; Ex parte Carrell, 565 So. 2d [104,] 108 [(Ala. 1990)]. Justified delay – which includes such occurrences as missing witnesses or delay for which the defendant is primarily responsible – is not weighted against the State. Barker, 407 U.S. at 531; Zumbado v. State, 615 So. 2d 1223, 1234 (Ala. Crim. App. 1993) ('"Delays occasioned by the defendant or on his behalf are excluded from the length of delay and are heavily counted against the defendant in applying the balancing test of Barker."') (quoting McCallum v. State, 407 So. 2d 865, 868 (Ala. Crim. App. 1981))."

928 So. 2d at 265.

There is no allegation in the record that the delay in bringing MacGrady to trial was deliberate. MacGrady conceded as much at the hearing but did ask that the circuit court find the delay to be negligent.

(R. 5.) The State pushed back on this point, arguing below that the delay was justified because of the COVID-19 pandemic.

Indeed, after recognizing that jury trials in Alabama were suspended by order of the Alabama Supreme Court from March 13, 2020, to September 14, 2020, because of the COVID-19 pandemic, this Court held in Quinnie v. State, [Ms. CR-21-0374, Dec. 16, 2022] ___ So. 3d ___, ___ (Ala. Crim. App. 2022), that the six months that had passed during the suspension of jury trials could not be held against the State. According to the State, grand juries in the Tenth Judicial Circuit were suspended even longer, until November 2020.

Yet, MacGrady's case was initiated with his arrest on February 21, 2022, some 15 months after grand juries had resumed in the Tenth Judicial Circuit. In truth, the State's explanation for the delay was a pre-existing backlog of cases that had been exacerbated by the COVID-19 pandemic.[3] The State asserted to the circuit court that, in attempting to whittle down the backlog of pending cases, it had prioritized holding trials for defendants who were incarcerated while awaiting trial and

[3] The circuit court agreed with the State that the "COVID-19 pandemic created a backlog of cases for grand jury presentment." (C. 12.)

defendants who were charged with violent crimes[4] – neither of which applied to MacGrady.

In Quinnie, this Court held that only the six months that had passed during the suspension constituted justifiable delay. Quinnie, ___ So. 3d at ___. The remainder of the delay, both before and after the suspension of jury trials, was held to be negligent delay on the part of the State. Id. Further, this Court commonly views delays resulting from a congested court system as negligent "since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." Barker, 407 U.S. at 531. This is especially true in the instant case because it involves a delay in presenting the case to the grand jury, an act over which the State has greater control relative to the setting of a case for trial. Nevertheless, this Court is sympathetic to the burdens placed on an already strained criminal-justice system by the COVID-19 pandemic. Although the 20-month delay must weigh against the State, given the nature of the delay, this Court holds that it should not weigh heavily. See Draper v. State, 886 So. 2d 105, 115 (Ala. Crim. App. 2002) ("It appears that none of the 77-month delay was attributable to the

[4] See Rule 8.1, Ala. R. Crim. P.

prosecutor; rather, the delay was the result of a large backlog of cases in Jefferson County and, therefore, should not weigh heavily against the State.").

Defendant's Assertion of his Right

"[C]ourts applying the Barker factors are to consider in the weighing process whether and when the accused asserts the right to a speedy trial, 407 U.S. at 528-29, and not every assertion of the right to a speedy trial is weighted equally." Ex parte Walker, 928 So. 2d at 265. For instance, "[r]epeated requests for a speedy trial weigh heavily in favor of an accused." Kelley v. State, 568 So. 2d 405, 410 (Ala. Crim. App. 1990) (citing Wilson v. State, 407 So. 2d 584, 588 (Ala. Crim. App. 1981)).

MacGrady first asserted his right to a speedy trial the month following his arrest. MacGrady moved to dismiss the indictment for an alleged violation of his right to a speedy trial 13 months after his arrest and moved again to dismiss on the same ground 20 months after his arrest. The State concedes on appeal that MacGrady's assertions of his right to a speedy trial were timely and that this factor weighs in MacGrady's favor. This Court agrees.

Prejudice to the Defendant

The dispute between the parties on appeal lies with the final factor – prejudice to MacGrady. The State asserts in its brief that MacGrady failed to demonstrate sufficient prejudice to warrant the dismissal of his charge. MacGrady, on the other hand, asserts that, because the other three factors weigh in his favor, he is entitled to presumed prejudice. In the alternative, MacGrady asserts that he has suffered and that he did demonstrate prejudice. He points specifically to the attachments to his amended motion to dismiss, which were purportedly emails from Texas Pride Fuels, a diesel and lubricant supplier: "Mr. MacGrady had apparently secured a lucrative position working for Texas Pride Fuels, and even gone so far as to complete the orientation program. However, Mr. MacGrady was apparently either terminated or denied employment due to the then-pending felony allegation." (MacGrady's brief, at 8.)

This Court first will address MacGrady's assertion that he is entitled to a presumption of prejudice. MacGrady relies on Hayes v. State, 487 So. 2d 987 (Ala. Crim. App. 1986), in support of his argument that he did not bear the burden of making "a showing of actual prejudice to prevail on a speedy trial claim." (MacGrady's brief, at 7.) Quoting

Hayes, MacGrady asserts in his brief that "'[the] prosecution should not be permitted to engage in inexcusable misconduct on the hope that the defendant will not be able to make out a case of prejudice.' [Hayes] at 995-996." (MacGrady's brief, at 7.)

This Court's holding in Hayes, however, simply does not apply to the facts of this case. Hayes, as the quotation suggests, dealt with a delay that was found to be "deliberate and inexcusable, thus warranting heavy weight against the State." Hayes, 487 So. 2d at 992-93. As this Court has already held, and as MacGrady conceded at the hearing below, the delay here was, at most, negligent on the part of the State. The holding of the Alabama Supreme Court in Ex parte Walker addresses whether prejudice may be presumed due to negligent delay on the part of the State:

> "'[T]o warrant granting relief, negligence unaccompanied by particularized trial prejudice must have lasted longer than negligence demonstrably causing such prejudice.' Doggett v. United States, 505 U.S. [647,] 657 [(1992)], 112 S. Ct. 2686. The Court concluded that 'the Government's egregious persistence in failing [for 8 1/2 years] to prosecute Doggett [was] clearly sufficient' to entitle the accused to relief. 505 U.S. at 657, 112 S. Ct. 2686. The Doggett Court did not, however, establish a bright-line rule for the length of delay caused by governmental negligence that will warrant a finding of presumed prejudice under the fourth Barker factor. Even so, when an accused alleges solely that [his] trial was

> delayed because of governmental negligence – as is the case here – lower federal courts applying Doggett generally do not presume prejudice under the fourth Barker factor unless the postindictment delay is five years or more. [United States v.] Serna-Villarreal, 352 F.3d [225,] 232 [(5th Cir. 2003)] (refusing to presume prejudice under the fourth Barker factor in a case in which prosecutorial negligence delayed the accused's trial for three years and nine months and citing Doggett, 505 U.S. at 658, 112 S. Ct. 2686 (presuming prejudice after six-year delay caused by the government's negligence); United States v. Bergfeld, 280 F.3d 486, 489-91 (5th Cir. 2002) (presuming prejudice after a five-year-and-three-month delay caused by the government's negligence, but noting that '[h]ad the delay been considerably shorter, [the accused] might well have been properly required to demonstrate prejudice'); United States v. Cardona, 302 F.3d 494, 498-99 (5th Cir. 2002) (presuming prejudice where governmental negligence resulted in a delay of more than five years); United States v. Brown, 169 F.3d 344, 349-51 (6th Cir. 1999) (presuming prejudice where governmental negligence resulted in five and one-half-year delay); United States v. Shell, 974 F.2d 1035, 1036 (9th Cir. 1992) (presuming prejudice where governmental negligence resulted in a six-year delay)). Like the Doggett Court, we do not adopt a bright-line rule for the length of delay that will result in a finding of presumed prejudice. But we note that the four-year-and-two-month delay in Walker's case is well within the five-year time period generally established by federal cases for presuming prejudice. Further, '[t]here is no indication from this record that either the [State]'s negligence or the resulting length of the delay here adversely affected the evidence so as to undermine the fairness of a trial.' Serna-Villarreal, 352 F.3d at 233."

Ex parte Walker, 928 So. 2d at 269-70.

"[O]ur toleration of such negligence varies inversely with its protractedness, cf. Arizona v. Youngblood, 488 U.S. 51, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988), and its consequent threat to the fairness of the accused's trial." Doggett v. United States, 505 U.S. 647, 657 (1992). The delay here of 20 months is well short of any standard that would trigger presumed prejudice. Additionally, '[t]here is no indication from this record that either the [State]'s negligence or the resulting length of the delay here adversely affected the evidence so as to undermine the fairness of a trial.' [United States v. ]Serna-Villarreal, 352 F.3d [225,] 233 [(5th Cir. 2003)]." Ex parte Walker, 928 So. 2d at 269-70. In short, MacGrady is not entitled to a presumption of prejudice.

Next, this Court will turn to whether MacGrady demonstrated actual prejudice. The Alabama Supreme Court has stated:

> "Because 'pretrial delay is often both inevitable and wholly justifiable,' Doggett [v. United States], 505 U.S. [647,] 656, 112 S. Ct. 2686, 120 L. Ed. 2d 520 [(1992)], the fourth Barker factor examines whether and to what extent the delay has prejudiced the defendant. Barker, 407 U.S. at 532, 92 S. Ct. 2182. The United States Supreme Court has recognized three types of harm that may result from depriving a defendant of the right to a speedy trial: '"oppressive pretrial incarceration," "anxiety and concern of the accused," and "the possibility that the [accused's] defense will be impaired" by dimming memories and loss of exculpatory evidence.' Doggett, 505 U.S. at 654, 112 S. Ct. 2686 (quoting Barker, 407

> U.S. at 532, 92 S. Ct. 2182, and citing Smith v. Hooey, 393 U.S. 374, 377-79, 89 S. Ct. 575, 21 L. Ed. 2d 607 (1969); United States v. Ewell, 383 U.S. 116, 120, 86 S. Ct. 773, 15 L. Ed. 2d 627 (1966)). 'Of these forms of prejudice, "the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." ' 505 U.S. at 654, 112 S. Ct. 2686 (quoting Barker, 407 U.S. at 532, 92 S. Ct. 2182)."

Ex parte Walker, 928 So. 2d at 266-67.

MacGrady was not incarcerated, and he did not suggest that his defense was impaired in any way by virtue of the delay. Instead, MacGrady asserted the second type of harm – anxiety and concern of the accused.

This Court notes that there was no sworn testimony offered at the hearing in the circuit court. MacGrady did offer, as mentioned above, images of emails from Texas Pride Fuels. The first email is a response to an apparent application submitted by MacGrady for a position with Texas Pride Fuels. The email details the work schedule, salary, and benefits associated with the position. The email also states that the applicant must have a "clean criminal history." (C. 27.) The second email purports to be an email directing MacGrady to attend a new-hire orientation.

At the hearing, defense counsel alleged that MacGrady was terminated from this position and another unnamed position because of the pending criminal charge. Defense counsel also alleged that MacGrady had been denied employment with "Coca-Cola, A&G Grocery, Mercedes, and other employers. He can't find a job because this case is still pending." (R. 6-7.) The State countered defense counsel's claims by pointing out that the position with Texas Pride Fuels – the only one for which MacGrady offered something that could be construed as evidence – required a "clean criminal history." The State represented to the circuit court that MacGrady has "a significant criminal history," including "several felony convictions." (R. 11.) The State also pointed out that MacGrady had offered nothing to demonstrate the specific reason he had been denied employment with Texas Pride Fuels.

The circuit court, both at the hearing and in her order dismissing the case, agreed with the State that MacGrady had a significant criminal history. (R. 16; C. 12.) This completely undercuts MacGrady's only specific claim of prejudice – that he was denied employment based on the pending criminal charge. Certainly, MacGrady's prior felony convictions would have been more harmful to his search for employment. The circuit

court appeared to recognize this at the hearing, stating, "I don't think the defendant was prejudiced, based upon the State's argument, that he had a significant criminal history." (R. 16.)

Nevertheless, the circuit court found the existence of prejudice: "While [MacGrady] does have some prior criminal history, the disadvantage of having a criminal case pending for such a length of time demonstrates prejudice to the defendant." (C. 12.) This was error. As explained herein, the length of time involved did not warrant a presumption of prejudice, and MacGrady offered no other evidence of prejudice.

"'With no presumed prejudice and minimal – if any – actual prejudice in [MacGrady's] case, the delay did not violate [his] right to a speedy trial.' See State v. Jones, 35 So. 3d 644, 659 (Ala. Crim. App. 2009) (citing Doggett, 505 U.S. at 656, 112 S. Ct. 2686 ('Our speedy trial standards recognize that pretrial delay is often both inevitable and wholly justifiable.'))." State v. Crandle, 368 So. 3d 934, 946 (Ala. Crim. App. 2021). "Consequently, 'balancing the four Barker factors, we cannot say that the delay in this case experienced by [MacGrady] prejudiced

[him] to the degree that would warrant the dismissal' of the ... charge against him at this time." Id.

Conclusion

The record before this Court does not contain sufficient evidence to warrant the dismissal of the pending charge against MacGrady. Thus, the circuit court improperly granted MacGrady's motion to dismiss based on the denial of his right to a speedy trial. Accordingly, the judgment of the circuit court is reversed, and this cause is remanded to that court for proceedings consistent with this opinion.

REVERSED AND REMANDED.

Kellum, McCool, Cole, and Minor, JJ., concur.